No. 17-2150

IN THE UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT
_____

**WILLIAM C. BOND, Appellant,**

**v.**

**JOHNNY L. HUGHES, *et al.*, Appellees.**
_____

*Appeal from the United States District Court for the District of Maryland*
*Honorable David A. Faber, Senior United States District Judge*
_____

**BRIEF FOR THE APPELLEES, THE UNITED STATES OF AMERICA,
JOHNNY L. HUGHES, ROD J. ROSENSTEIN, KEVIN PERKINS**
_____

Robert K. Hur
United States Attorney

Matthew P. Phelps
Assistant United States Attorney
36 South Charles Street, 4th Floor
Baltimore, Maryland 21201
(410) 209-4800

*Counsel for the Appellees*

April 30, 2018

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................1

STATEMENT OF THE ISSUE................................................................2

STATEMENT OF THE CASE................................................................2

   I.   Bond's Original Complaint................................................ 2

   II.  The District Court's Memorandum Opinion and Order......................... 3

   III. Post-Judgment Motions and Orders ............................................ 4

SUMMARY OF THE ARGUMENT ................................................5

STANDARD OF REVIEW ................................................................7

ARGUMENT ....................................................................................8

   I.   The Reasoning for the District Court's Denial of Bond's Motion was
Apparent as the District Court Cited its Prior Memorandum Opinion. .................... 8

   II.  Bond's Proposed First Amendment Claim Failed to Cure the Standing
Deficiency Identified in the District Court's Original Memorandum Opinion. ...10

     A.  The new facts in the Second Amended Complaint did not establish
objective evidence of self-censorship.................................................11

     B.  The "relaxed" standing requirement in First Amendment cases does not
apply to Bond's First Amendment claim.............................................15

   III. Bond's Proposed Due Process Claim Failed to State a Claim for the Same
Reasons Identified in the District Court's Original Memorandum Opinion.........17

   IV. Bond's *Pro Se* Status Did Not Entitle Him to a Different Result. ...................19

CONCLUSION ................................................................................21

CERTIFICATE OF COMPLIANCE........................................................22

CERTIFICATE OF SERVICE ................................................................23

# TABLE OF AUTHORITIES

## Cases

*11126 Baltimore Blvd., Inc. v. Prince George's County, Md.*,
     58 F.3d 988 (4th Cir. 1995) ................................................................ 18

*Arizona Right to Life Political Action Comm. v. Bayless*,
     320 F.3d 1002 (9th Cir. 2003) ........................................................... 16

*Bivens v. Six Unknown Named Agents*,
     403 U.S. 388 (1971) ............................................................................ 2

*Cooksey v. Futrell*,
     721 F.3d 226 (4th Cir. 2013) ........................................... 10, 12, 15, 16

*Edwards v. City of Goldsboro*,
     178 F.3d 231 (4th Cir. 1999) ............................................................... 8

*Foman v. Davis*,
     371 U.S. 178 (1962) ........................................................................... 19

*HealthSouth Rehab. Hosp. v. American Nat'l Red Cross*,
     101 F.3cd 1005 (4th Cir. 1996) ........................................................... 9

*Human Life of Wash. Inc. v. Brumsickle*,
     624 F.3d 990 (9th Cir. 2010) ............................................................. 15

*In re PEC Solutions, Inc. Securities Litigation*,
     418 F.3d 379 (4th Cir. 2005) ............................................................... 9

*Katyle v. Penn Nat'l Gaming, Inc.*,
     637 F.3d 462 (4th Cir. 2011) ............................................................... 8

*Laber v. Harvey*,
     438 F.3d 404 (4th Cir. 2006) ............................................................... 8

*Laird v. Tatum*,
     408 U.S. 1 (1972) ........................................................................ 10, 13

*Mayfield v. Nat'l Ass'n for Stock Car Auto Racing, Inc.*,
     674 F.3d 369 (4th Cir. 2012) ............................................................. 18

*Perkins v. United States*,
     55 F.3d 910 (4th Cir. 1995) ................................................................. 8

*Scott v. Family Dollar Stores, Inc.*,
    733 F.3d 105 (4th Cir. 2013) ................................................................ 7

*Secretary of State of Md. v. Joseph H. Munson Co., Inc.*,
    467 U.S. 947 (1984) ........................................................................... 15

*Ziglar v. Abbasi*,
    582 U.S. __, 137 S.Ct. 1843 (2017) ..................................................... 7

**Statutes**

28 U.S.C. § 2679 ................................................................................... 3

**Other**

Federal Rule of Appellate Procedure 28 ................................................ 18

District of Maryland Local Rule 103 ..................................................... 20

iii

## PRELIMINARY STATEMENT

Appellant William C. Bond ("Bond") is well-known in the Baltimore area for his protests against certain members of the federal judiciary, whom he has dubbed the "White Guerilla Family." According to Bond, after he publicized his "White Guerilla Family" advertisements, federal agents questioned him out of concern for the safety of certain government officials and federal judges. Bond filed a Complaint alleging that this questioning was an attempt to chill his First Amendment rights, except that Bond also admitted to subsequently engaging in multiple protests, both through print and through live demonstrations at the United States District Courthouse in Baltimore, Maryland. The District Court dismissed Bond's Complaint for lack of standing because Bond admitted to protesting on multiple occasions after he was questioned by the federal agents.

Bond attempted to cure his standing deficiency through subsequent amendments by alleging that, although he continued to protest, he curbed the "robustness" of his protests. Bond, however, did not provide any objective facts indicating that his First Amendment rights were affected. To the contrary, the subsequent amendments showed that the questioning by federal agents only increased Bond's resolve to continue his protests. For these reasons and for the reasons stated herein, the District Court did not abuse its discretion when it denied Bond's Motion for Leave to file a Second Amended Complaint.

1

## STATEMENT OF THE ISSUE

Whether the District Court abused its discretion when it denied Bond's Motion to Reopen the case and file a Second Amended Complaint when the Second Amended Complaint failed to cure the material deficiencies identified in the District Court's original 28-page Memorandum Opinion and Order.

## STATEMENT OF THE CASE

### I.     Bond's Original Complaint

For several years, Bond has engaged in protests against what he claims to be "'provable corruption' in the Maryland U.S. courthouse[.]"  JA 010.  On July 29, 2016, Bond filed a Complaint pursuant to *Bivens v. Six Unknown Named Agents*, 403 U.S. 388 (1971), alleging that, as a result of his protests, federal agents and members of the judiciary conspired to violate his First Amendment and due process rights.  *See* JA 005-27.  Bond's Complaint alleged six constitutional violations; however, only the following counts are relevant to the Appellees here:

- Count I – On July 19, 2013 and July 30, 2013, federal agents questioned Bond "regarding the potential safety of various government officials and federal judges," in an attempt to "prevent and/or to intimidate plaintiff's planned demonstrations . . . ."  JA 012-17.

2

- Counts III & IV – In the fall of 2013, a Deputy U.S. Marshal informed Bond that he had been under surveillance since 2010. Bond alleged that this surveillance violated his constitutional rights. JA 019-22.

Bond alleged that "[t]hese intentional, knowing, bad-faith, and illegal acts by the defendants caused plaintiff great worry, anxiety, fear, sleeplessness, etc., amongst many other things, as it was clear to plaintiff that his enemies would stop at nothing to defeat his constitutional rights." *See*, *e.g.*, JA 021. Bond named U.S. Marshal Johnny L. Hughes, former U.S. Attorney Rod Rosenstein, former F.B.I. Special Agent in Charge Kevin Perkins, and "Unknown Named Maryland U.S. Judges" as defendants. JA 005.

## II.    The District Court's Memorandum Opinion and Order

Defendants Hughes, Rosenstein, and Perkins filed a Motion to Substitute and to Dismiss the Complaint.[1] *See* JA 039. Bond opposed the Motion. JA 054. On April 12, 2017, in a 28-page Memorandum Opinion, the Court granted the Motion and dismissed the Complaint. JA 079-108.

---

[1] The Motion to Substitute sought to substitute the United States in place of the individual defendants, pursuant to 28 U.S.C. § 2679(d), to the extent that Bond's Complaint was construed as a tort claim pursuant to the Federal Tort Claims Act. JA 049-50.

The Court first dismissed the Complaint because Bond did not allege that the individual Defendants engaged in any of the alleged unconstitutional acts stated in the Complaint, and *Bivens* does not permit official-capacity or vicarious liability. JA 090-93. The Court next dismissed Bond's First Amendment claim because Bond lacked standing. JA 093-95. Bond did not show the requisite self-censorship or chilling effect on his speech to establish standing under the First Amendment. JA 094-95. The District Court noted that Bond "admit[s] that subsequently he protested for several weeks." JA 095. Finally, the Court dismissed Bond's due process claim because Bond's conclusory allegations regarding government surveillance did not state a due process claim under Rule 12(b)(6) and 8(a) of the Federal Rules of Civil Procedure. JA 095-102.

## III.    Post-Judgment Motions and Orders

On May 9, 2017, Bond filed a Motion to Reopen the Case to file an Amended Complaint. JA 109. Among other changes, Bond's Amended Complaint named the federal agents who questioned him. JA 119. The Court denied Bond's Motion, citing its original 28-page Memorandum Opinion. JA 270.

Bond filed a second Motion to Reopen the Case and to file a Second Amended Complaint. JA 271. The Defendants opposed the Motion, arguing that the Second Amended Complaint did not cure the deficiencies identified in the District Court's

4

original Memorandum Opinion.[2]    JA 362-68.    In particular, Bond's Second Amended Complaint still asserted that "[t]he protests began on August 4, 2013."  JA 299.    The District Court denied Bond's Motion, again citing its previous Memorandum Opinion.  JA 415-16.

## SUMMARY OF THE ARGUMENT

The District Court did not abuse its discretion when it denied Bond's Motion to File a Second Amended Complaint because the Second Amended Complaint suffered from the same deficiencies identified in the Court's original Memorandum Opinion.  Although Bond cured one issue by naming the federal agents who questioned him, Bond did not cure the other deficiencies identified by the District Court in its 28-page Memorandum Opinion.

Specifically, regarding Bond's First Amendment claim, Bond did not cure the standing deficiency present in every version of his complaint.  Bond continued to assert that "[t]he protests began on August 4, 2013."  JA 299.  If anything, Bond's Second Amended Complaint and the exhibits thereto showed that he was more-determined to protest following the questioning by federal agents.  In an email to the U.S. Attorney's Office the day after federal agents questioned him, Bond called the

---

[2] Undersigned counsel did not appear on behalf of the new defendants because they had not been served with a complaint and they had not requested or obtained representation from the Department of Justice.  Accordingly, undersigned counsel did not offer defenses unique to the new defendants, such as qualified immunity.

questioning "phoney intimidation BS," and he warned the U.S. Attorney's Office not to "orchestrate/ play games with the [protest] permit process." JA 207-08. He added that he would engage in his scheduled protests even if he could not obtain a permit. JA 208.

Regarding Bond's due process claim, Bond's Second Amended Complaint continued his conclusory allegations of unconstitutional spying, without any factual support. Notably, Bond's appellate brief generally asserts that the District Court abused its discretion when it denied Bond's request for leave to file a due process claim, but the brief stops short of arguing that the Second Amended Complaint stated a due process claim.

Finally, Bond's *pro se* status did not entitle him to a different result. Although *pro se* pleadings are to be liberally construed, Bond's allegations are unambiguous and easy to comprehend. The District Court appropriately construed Bond's Complaint and Second Amended Complaint, and Bond's brief does not make his allegations any more clear than they were before the District Court. Bond also suggests that he was treated unfairly because the District Court admonished him not to drain the judiciary's resources and "reflexive[ly]" denied his motions for leave to amend "without any substantive justification." No. 24 at 2, 28. Yet, the District Court's admonishment came only after it had devoted more than 20 pages to analyzing the substance of Bond's cause of action. *See*, *e.g.*, JA 079-104. The

6

District Court's in-depth analysis was sufficient to demonstrate the futility of the Second Amended Complaint without regard to whether Bond was *pro se* or represented.

The Court should note that the Supreme Court's decision in *Ziglar v. Abbasi*, 582 U.S. __, 137 S.Ct. 1843 (2017), is not addressed in this brief. In short, *Abbasi* provided a rubric for lower courts to use when determining whether to recognize a *Bivens* or damages remedy to redress a constitutional violation. *See id.* at 1854-58. As explained in this brief, Bond has not set forth a constitutional violation, and so the Court does not need to consider whether to recognize a damages remedy under the rubric set forth in *Abbasi*.

## STANDARD OF REVIEW

A district court's decision to deny a motion for leave to amend a complaint is reviewed under an abuse-of-discretion standard. *Scott v. Family Dollar Stores, Inc.*, 733 F.3d 105, 112 (4th Cir. 2013). A district court abuses its discretion when it "rest[s] its decision on a clearly erroneous finding of material fact, or by misapprehending the law with respect to underlying issues in the litigation." *Id.* (quoting *Quince Orchard Valley Citizens Ass'n, Inc. v. Hodel*, 872 F.2d 75, 78 (4th Cir. 1989) (internal quotations omitted)).

## ARGUMENT

### I.    The Reasoning for the District Court's Denial of Bond's Motion was Apparent as the District Court Cited its Prior Memorandum Opinion.

Bond first argues that the District Court abused its discretion by denying his Motion for Leave to file a Second Amended Complaint "without providing an explanation of why the proposed amended complaint allegedly falls short." ECF No. 24 at 33. This is not true. The District Court denied Bond's Motion because it was futile, citing its previous 28-page Memorandum Opinion. *See* JA 415.

This Court has held that "a post-judgment motion to amend is evaluated under the same legal standard as a similar motion filed before judgment was entered – for prejudice, bad faith, or futility." *Laber v. Harvey*, 438 F.3d 404, 427 (4th Cir. 2006); *see also Katyle v. Penn Nat'l Gaming, Inc.*, 637 F.3d 462, 471 (4th Cir. 2011) (in determining whether to vacate a judgment in the face of a proposed amendment, the court need not focus on the legal standards of Rules 59(e) or 60(b), but rather only on Rule 15(a)). Futility, in turn, is evaluated under the Rule 12(b)(6) standard. *See Perkins v. United States*, 55 F.3d 910, 916-17 (4th Cir. 1995) (upholding a district court's decision to deny leave to amend when the proposed amendment "would likewise fail to withstand a motion to dismiss[.]")

This Court has also held that "as long as a district court's reasons for denying leave to amend are apparent, its failure to articulate those reasons does not amount to an abuse of discretion." *Edwards v. City of Goldsboro*, 178 F.3d 231, 242 (4th

8

Cir. 1999) (citing *HealthSouth Rehab. Hosp. v. American Nat'l Red Cross*, 101 F.3d 1005, 1010 (4th Cir. 1996)). Further, a district court can make its reasoning apparent by citing to the opinion that dismissed the original pleading. *See In re PEC Solutions, Inc. Securities Litigation*, 418 F.3d 379, 391 (4th Cir. 2005) (finding the district court's reasoning was apparent when it stated "for the reasons stated above [in the opinion].")

Here, the Court's ruling was apparent by virtue of its citation to its previous Memorandum Opinion, which devoted more than 20 pages of analysis to Bond's cause of action. Although the District Court did not identify the three bases for denying a motion for leave to amend – prejudice, bad faith, and futility – the only basis relevant to the District Court's original Memorandum Opinion is futility. Again, this Court has found that a district court's reasoning was "apparent" when it cited to the opinion dismissing the original pleading. *In re PEC Solutions, Inc.*, 418 F.3d at 391. Further, as more thoroughly explained in the following sections, the deficiencies in the Second Amended Complaint are not difficult to ascertain in light of the extensive analysis in the Memorandum Opinion, and the District Court should not be faulted for citing its Memorandum Opinion. To require the District Court to reprint nearly all of its Memorandum Opinion into every subsequent order would be superfluous, and, according to the law in this circuit, unnecessary.

## II.    Bond's Proposed First Amendment Claim Failed to Cure the Standing Deficiency Identified in the District Court's Original Memorandum Opinion.

To establish standing in a First Amendment case, a plaintiff is required to demonstrate "a sufficient showing of 'self-censorship, which occurs when a claimant is chilled from exercising h[is] right to free expression.'" *Cooksey v. Futrell*, 721 F.3d 226, 235 (4th Cir. 2013) (citations omitted).  In *Cooksey*, the Fourth Circuit also noted:

> [T]he chilling effect cannot "arise merely from the individual's knowledge that a governmental agency was engaged in certain activities or from the individual's concomitant fear that, armed with the fruit of those activities, the agency might in the future take some *other* and additional action detrimental to that individual." *Laird v. Tatum,* 408 U.S. 1, 11, 92 S.Ct. 2318, 33 L.Ed.2d 154 (1972). In other words, "[a]llegations of a subjective 'chill' are not an adequate substitute for a claim of specific present objective harm or a threat of specific future harm [.]" *Id.* at 13–14, 92 S.Ct. 2318.

*Id.* at 236.  In its Memorandum Opinion, the District Court found that Bond did not demonstrate self-censorship or a chilling effect on his speech because he admitted that he engaged in multiple protests beginning on August 4, 2013.  *See* JA 093-95. Bond did not appeal that determination, and this Court should deem the District Court's Memorandum Opinion to be legally correct.  Thus, the only issue before this Court is whether Bond's proposed Second Amended Complaint cured the deficiencies identified in the Court's original Memorandum Opinion.

10

 A. *The new facts in the Second Amended Complaint did not establish objective evidence of self-censorship.*

Bond argues that the following allegations in the Second Amended Complaint, numbered one through six in his brief, demonstrate his standing to bring a First Amendment claim:

> 1)    FBI Agent Dugan "asked—holding some of [Bond's] 'White Guerrilla Family' promotional literature in his hand—'What would it take to make this [the planned demonstrations] go away?'" JA295.

> 2)    "[J]ust two (2) days after plaintiff's first City Paper ads— ads which received much notice in Baltimore—the law enforcers suddenly found exigent reasons to attempt to intimidate and influence plaintiff's First Amendment rights." JA296.

> 3)    "For example, because of this first visit by the law enforcers, plaintiff was forced to consult a criminal defense lawyer, other lawyers and business people, numerous friends, to worry and lose much sleep, and to be greatly distracted when he was on an abbreviated time line and had much still to do to organize the August 4, 2013, protests, amongst many other things." JA296–297.

> 4)    "This worry and distraction chilled and curtailed the robustness of plaintiff's [F]irst [A]mendment activity—as one would expect following visits from interrogating law enforcement personnel asking, 'What will it take to get you to shut up?'" JA297.

> 5)    Paragraph 36 of the second amended complaint, which includes: "This second visit caused plaintiff the same injuries and curtailed speech as just recounted above, only they were exacerbated, as plaintiff now only had five (5) days left before his first protest at the Baltimore U.S. Courthouse." JA297.

> 6)    "Further, it doesn't matter that the defendants were unable to arrest plaintiff on July 30, 2013. What matters is that they tried. Just as they tried and succeeded in diluting plaintiff's demonstration planning and to curb the robustness of his speech/protest and execution. Clearly,

11

> their reasons were that they were trying to make plaintiff's planned
> demonstrations go away by any means possible. By any means."
> JA318.

ECF No. 24 at 25-26.  These allegations, however, do not alter the District Court's

original standing determination for several reasons.

First, many of these facts are not new.  The first allegation is in the original

Complaint.  JA 015.  The City Paper ads identified in the second allegation were

referenced in the original Complaint.  JA 011.  The sleeplessness and worry

referenced in the third allegation were also in Bond's original Complaint.  JA 016.

The sixth allegation listed above is a dramatized reiteration of Bond's original First

Amendment claim.[3]

Second, most of these new allegations are not relevant to self-censorship.  The

only fact that is relevant to self-censorship is Bond's subjective assertion that he

curbed, curtailed, or diluted the "robustness" of his protests.  Yet, "'[a]llegations of

a subjective 'chill' are not an adequate substitute for a claim of specific present

objective harm or a threat of specific future harm[.]'"  *Cooksey*, 721 F.3d at 236

---

[3] Regarding the threatened arrest, the alleged threat related to the unlawful
possession of firearms. *See* JA 296 (describing the encounter as an "attempt to arrest
plaintiff for illegal weapons possession….") According to Bond, the agents
"peppered [him] with questions regarding the potential safety of various government
officials and federal judges," asked him, "where were [the] guns?" and stated that a
government database indicated that he owned a firearm. JA 292-94. Although Bond
surmises that the threat of arrest was an attempt to prevent his protests, the agents
never stated that they would arrest him if he protested. The threatened-arrest
allegation is also neither new nor relevant to self-censorship.

(quoting *Laird*, 408 U.S. at 13-14). These subjective assertions also do not alter the District Court's original finding that Bond did not offer objective evidence that his speech was chilled. The District Court noted that "never does Plaintiff allege that the agents forbade him from protesting nor did they take any actions to prevent the protests." JA 094-95. Further, the prohibition on subjective assertions of harm is particularly relevant here, where Bond's reaction at the time of the questioning was to describe the agents as "courteous, pleasant, and polite," but he also called their questioning "phoney intimidation BS." JA 207. Only after the District Court informed Bond that he needed evidence of self-censorship did he allege that he curtailed or diluted his speech.

Bond also argues that the District Court abused its discretion by failing to consider the sixteen exhibits to his Second Amended Complaint. ECF No. 24 at 39. Yet, Bond does not argue in his brief that those exhibits are relevant to the standing analysis. In fact, many of the exhibits pre-date Bond's questioning by several years, and in some cases, several decades. *See*, JA 228, 240, 242, 244-48.

Bond does argue in his brief that his "White Guerilla Family" advertisement, cited in the Second Amended Complaint, "relates directly to the arguably offensive content – from the defendants' perspective – of Bond's intended protest." ECF No. 24 at 41. Bond may be correct that his "guerilla" advertisement could have informed the agents' decision to question him, but the advertisement does not demonstrate the

13

objective chilling of Bond's speech. To the contrary, Bond admits in his brief that "[t]hese advertisements began running in the newspaper in July 2013 and *continued through the fall of the same year*." ECF No. 24 at 13 (emphasis added); JA 290.

If anything, the exhibits show that Bond was not intimidated into chilling his speech. In an email to the U.S. Attorney's Office the day after he was questioned for the first time, Bond called the agents "courteous, pleasant, and polite," but said their questioning was "the most phoney intimidation BS[.]" JA 207. He went on to state:

> I am speaking with the manager of the US Courthouse Monday morning to obtain the permit(s) for my demonstration on August 6 – the 'White Guerrillas' ruling upon the 'Black Guerrillas.' Once I have that permit in hand, the demonstration will not be canceled. I would say that will be by Tuesday morning latest. If, on the other hand, you orchestrate/play games with the permit process, I'll just have the demonstration anyway – under public notice of 'objection' – and dare your officers to continue this nonsense in full view of the public and the press.

JA 207-08. The federal agents did not chill Bond's speech. Instead, it appears that their questioning only increased Bond's resolve to conduct his planned protests. The District Court, therefore, did not abuse its discretion in denying Bond's Motion for leave to file a First Amendment claim because Bond had still not shown objective harm to his First Amendment rights.

14

B. *The "relaxed" standing requirement in First Amendment cases does not apply to Bond's First Amendment claim.*

Bond argues that the standing requirement is relaxed in First Amendment cases, and that his First Amendment claim demonstrated standing in light of the relaxed requirement. ECF No. 24 at 51. The relaxed standard does not apply here.

The relaxed-standard cases hold that where a law has the effect of violating the First Amendment, a plaintiff is not required to violate the law first before seeking redress in court. *See Secretary of State of Md. v. Joseph H. Munson Co., Inc.*, 467 U.S. 947, 956 (1984); *Cooksey*, 721 F.3d at 235; *Human Life of Wash. Inc. v. Brumsickle*, 624 F.3d 990, 1000 (9th Cir. 2010) ("[W]hen a challenged statute risks chilling the exercise of First Amendment rights, the Supreme Court has dispensed with rigid standing requirements[.]" (internal quotations and citations omitted)). Specifically, the Supreme Court has stated:

> Even where a First Amendment challenge could be brought by one actually engaged in protected activity, there is a possibility that, rather than risk punishment for his conduct in challenging the statute, he will refrain from engaging further in the protected activity. Society as a whole then would be the loser. Thus, when there is a danger of chilling free speech, the concern that constitutional adjudication be avoided whenever possible may be outweighed by society's interest in having the statute challenged.

*Joseph H. Munson Co., Inc.*, 467 U.S. at 956. Thus, First Amendment plaintiffs are not required to violate a law and face the law enforcement consequences to establish standing; plaintiffs only have to show that they would face an objective, specific

15

threat of those law enforcement consequences if they were to engage in their protected speech. The Ninth Circuit has referred to this standard as the "hold your tongue and challenge now" approach. *See Arizona Right to Life Political Action Comm. v. Bayless*, 320 F.3d 1002, 1006 (9th Cir. 2003).

Factually, these cases do not apply here because Bond did not "hold his tongue and challenge" first; he proceeded with multiple protests, and he faced no law enforcement consequences. This relaxed standard would have been implicated if Bond had filed suit after he was questioned but before he protested, and even then, Bond would have been required to identify an objective, specific threat of future harm. *See Cooksey*, 721 F.3d at 236.

When he filed suit, however, Bond could not allege that he was facing a specific threat of future harm, thereby entitling him to the relaxed standing requirement. The relevant facts regarding his First Amendment claim took place three years before he filed his Complaint. The only way Bond could demonstrate standing related to acts that took place years earlier was to provide objective facts indicating that he self-censored himself or that his speech was chilled. The only evidence that he offered in this regard was his subjective assertion that he curbed the "robustness" of his protests. As shown throughout this brief, this subjective assertion is insufficient, if not false.

16

### III. Bond's Proposed Due Process Claim Failed to State a Claim for the Same Reasons Identified in the District Court's Original Memorandum Opinion.

Bond's original Complaint alleged unconstitutional spying dating to as early as 2010. JA 020-21. After discussing the relevant law related to due process claims,[4] the District Court dismissed this claim because "Plaintiff states only 'conclusory' allegations that are grounded solely in conjecture and speculation without any basis in fact." JA 101. The District Court noted that, "Plaintiff does not indicate how, if at all, his due process rights were violated. Moreover, there also exists no allegation that the government conducted electronic surveillance of Plaintiff's home telephone without obtaining a warrant." JA 097. The Court's holding in this regard was correct, and is not under review. The only issue, therefore, is whether the Second Amended Complaint cured the deficiencies identified in the Memorandum Opinion.

Bond's Second Amended Complaint did not contain any new facts with respect to his due process claim, other than to name the Deputy U.S. Marshal who claimed to have surveilled him. *See* JA 299-302. Bond did not explain how he was surveilled, when he was surveilled, where he was surveilled, whether federal agents

---

[4] In its Memorandum Opinion, the District Court provided a thorough recitation of the legal framework related to substantive and procedural due process claims. JA 95-103. That legal framework is not being recited in this brief because Bond did not attempt to articulate a due process claim in his brief, and the Appellants cannot formulate a response to the due process allegations when Bond does not articulate such a claim in his brief.

obtained a warrant to conduct such surveillance, or how the surveillance was unlawful or otherwise violated the Constitution.

Bond's brief also does not attempt to articulate a due process claim, and the Court should consider this argument to be waived. Federal Rule of Appellate Procedure 28(a)(8) requires an Appellant's argument to contain "appellant's contentions and the reasons for them, with citations to the authorities and parts of the record on which the appellant relies[.]" FED. R. APP. PROC. 28(a)(8)(A) (2018). Although Bond's brief generally asserts that the District Court abused its discretion in denying Bond leave to file a due process claim, the brief does not cite any law or any portion of the record, or otherwise assert that the Second Amended Complaint stated a due process violation. Bond's due process arguments, therefore, fail to comply with Rule 28 and the Court should consider his due process argument to have been waived. *See id.*; *Mayfield v. Nat'l Ass'n for Stock Car Auto Racing, Inc.*, 674 F.3d 369, 376-77 (4th Cir. 2012) (stating, "[a] party's failure to raise or discuss an issue in his brief is to be deemed an abandonment of that issue." (citing and quoting *11126 Baltimore Blvd., Inc. v. Prince George's County, Md.*, 58 F.3d 988, 993 n. 7 (4th Cir. 1995)).

Relatedly, Bond argues that the surveillance issue should have been analyzed under the Fourth Amendment (ECF No. 24 at 21), which prohibits warrantless searches and seizures; however, he does not attempt to articulate a Fourth

18

Amendment claim in his brief.   Thus, the District Court did not abuse its discretion

when it denied Bond's request for leave to amend, and the District Court correctly

cited its thorough Memorandum Opinion for its reasoning.

### IV.    Bond's *Pro Se* Status Did Not Entitle Him to a Different Result.

Bond, now represented, suggests that he received unfair treatment because he

was *pro se*.   Bond argues that the District Court failed to liberally construe his

pleadings.   ECF No. 24 at 30.   Bond further asserts that due process requires "full

evaluation" of his pleadings, but he did not receive that full evaluation because the

District Court "reflexive[ly]" denied his Motion for leave to file a Second Amended

Complaint "without any substantive justification[.]"   *Id.* at 28, 35.   Bond's concerns

related to his *pro se* status are not relevant here.

Regarding the liberal construction of his pleadings, Bond's Second Amended

Complaint contains a caption naming the parties, the allegations are listed in

enumerated paragraphs, the alleged constitutional violations are delineated in

separate counts, each count includes a request for relief, and Bond cites relevant case

law.   *See* JA 287-319.   In his Motion requesting leave to file the Second Amended

Complaint, Bond appropriately cited Rule 15(a) of the Federal Rules of Civil

Procedure and the Supreme Court's decision in *Foman v. Davis*, 371 U.S. 178, 182

(1962).   JA 277.   Bond made substantive arguments that his Second Amended

Complaint was not futile, and he cited the new facts in the Second Amended

Complaint that purportedly cured the deficiencies identified in the District Court's Memorandum Opinion. JA 273-85.

Throughout the litigation, Bond has also demonstrated a thorough understanding of the Federal Rules of Civil Procedure and the Local Maryland Rules. For example, Bond supplied red-lined versions of his amended complaints, consistent with Maryland Local Rule 103.6.c. *See*, *e.g.*, JA 320; MD. LOCAL RULE 103.6.c. The District Court even commented that Bond's Complaint "reads rather like a political thriller." JA 104. Although Bond's allegations were legally deficient, his claims were well-articulated and easy to comprehend. Moreover, Bond's claim is not clearer now that he is represented than it was when he was *pro se*, and his counsel does not offer any construction of Bond's cause of action that was not previously addressed by the District Court. Thus, the District Court construed Bond's pleadings appropriately, and the District Court did not abuse its discretion in denying Bond's Motion for leave to file a Second Amended Complaint.

Regarding Bond's assertion that the District Court entered a "reflexive dismissal—without any substantive justification," this assertion is not consistent with the record. As stated above, the District Court's reasoning for denying Bond's Motion for leave was apparent by virtue of its citation to its previous Memorandum Opinion. That Memorandum Opinion devoted more than 20 pages of analysis to the substance of Bond's claims, and the District Court's decision to cite its prior opinion

in subsequent orders rather than cut-and-paste the bulk of it does not demonstrate any unfairness towards Bond. Although Bond was admonished not to drain the judiciary's resources, that admonishment was in addition to, and not in lieu of, a thorough analysis of Bond's well-articulated pleadings.

## CONCLUSION

For the reasons stated herein, this Court should affirm the District Court's decision to deny Bond leave to amend and file a Second Amended Complaint.

Respectfully submitted,

Robert K. Hur
United States Attorney

s/ Matthew P. Phelps
Matthew P. Phelps
Assistant United States Attorney

Date:  April 30, 2018

## CERTIFICATE OF COMPLIANCE

Certificate of Compliance with Type-Volume Limitation,
Typeface Requirements and Type Style Requirements

This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because:

- this brief contains 4,950 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

- this brief has been prepared in a proportionally spaced typeface using Microsoft Word in Times New Roman, 14-point font.

Dated: April 30, 2018                    s/ Matthew P. Phelps
                                          Matthew P. Phelps
                                          Assistant United States Attorney

                                          Counsel for Appellee

22

## CERTIFICATE OF SERVICE

I hereby certify that on this 30th day of April, 2018, the foregoing was electronically filed and served on all counsel of record through the Court's CM/ECF system. I further certify that on the same day, a copy of the foregoing was mailed to the Court.

s/ Matthew P. Phelps
Matthew P. Phelps
Assistant United States Attorney

Counsel for Appellees